UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RHEA LARIMORE                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:03CV664-S

THOMAS GRANT, et al.                                            DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Thomas Grant and Ward
Engineering Company, for summary judgment on Counts II and III of the First Amended Complaint
in this action alleging violations of the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. §§ 1001 *et seq.*[1]

A party moving for summary judgment has the burden of showing that there are no genuine
issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v.
S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,
536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent
summary judgment. The disputed facts must be material. They must be facts which, under the
substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty
Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be
such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving
party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-
moving party, but that party is required to present some significant probative evidence which makes
it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of*

---

[1] The plaintiff, Rhea Larimore, asserted three claims in his First Amended Complaint. The court granted summary judgment as to Count I in favor of the defendants on March 15, 2005.

*Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Rhea Larimore is an employee of Ward Engineering Company and is a participant in the Ward Engineering Company Stock Ownership Plan and Trust ("the ESOP").  The ESOP was established in 1990 after the death of the company's founder and President, William Ward.  The ESOP was established to purchase Ward's shares in the company from his estate.  Ward bequeathed all of his shares of Ward stock in trust for this purpose.

Thomas Grant became President and member of the board of directors of Ward, and he is the Trustee of the ESOP.  As he was a beneficiary of William Ward's estate,[2] Grant was precluded from participating in the ESOP.

The First Amended Complaint identifies two acts of the defendants which allegedly violate the fiduciary duties owed by the ESOP Trustees.  First, in 1990, an agreement was formed whereby Grant could acquire Ward stock outside of the ESOP in the same manner as the ESOP participants.  This was originally a verbal agreement.  It was memorialized in 2003 in a document styled "Stock Grant Plan and Stock Restriction Agreement."  Under this plan, Grant is entitled to receive the same number of shares of stock that he would have received if he had been eligible to participate in the ESOP.  The plan provides that it is to be administered by a committee, but no committee has been appointed for that purpose.[3]  Second, In 1998 through 2002, Ward salaried employees were paid a base salary plus a performance bonus.  Larimore was among the employees who received a bonus

---

[2]Grant was Ward's son-in-law.  Also, Grant's two sons were beneficiaries of a trust established by William Ward.

[3]Count III of the First Amended Complaint relates generally to the issue of the establishment of this Stock Grant Plan. However, the claim further states that the Plan "reflects an 'Enron'-type situation wherein corporate officers have insider information relating to the value of the Company and are selling their stock to obtain the highest possible price to the detriment of the ESOP and ESOP participants and beneficiaries." First Amended Complaint, ¶ 31.  There is neither evidence nor argument offered in Larimore's response to the motion for summary judgment to support the "insider trading" allegations in Count III. The court presumes, therefore, that this portion of the claim has now been abandoned.

in each year.  Despite having himself been the recipient of such bonuses, Larimore now contends that the payment of "substantial salaries and bonuses from the Company...resulted in the Company experiencing a loss in 2002 which in turn resulted in the diminution in the value of the Company stock held by the ESOP."  Count II, ¶ 27.[4]

Counts II and III allege violations of fiduciary duties under § 1104(a)(1)(A) and (B) of ERISA.  Larimore urges that the decisions made by the defendants negatively impacted the ESOP. He contends that, in light of the fact that the defendants are Plan fiduciaries, these decisions breached their duty of fidelity to the ESOP.

> ERISA provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104.  The statute further specifies that a fiduciary's duties must be taken "for the exclusive purpose of...providing benefits to participants and their beneficiaries..." *Id.*  "Courts have read this section to impose 'an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation.'" *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 946 (6th Cir.1990)(quoting *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984)).

*Sengpiel v. B.F. Goodrich Company*, 156 F.3d 660, 665 (6th Cir.), *cert. denied*, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999).  The pivotal issue, however, is whether the acts of which Larimore complains were acts done in the defendants' fiduciary capacity.  As further explained in *Sengpiel, supra,*

> Courts have also recognized, however, that "a corporation's fiduciary duties under ERISA do not encompass all of its activities."  *United Steelworkers of Amer. v. Cyclops Corp.*, 860 F.2d 189, 198 (6th Cir. 1988).  An employer that also acts as a plan administrator is said to wear "two hats."  *See, e.g., Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir.1995).  Only when the employer acts in its fiduciary capacity must it comply with ERISA's fiduciary duties.

*Sengpiel,* 156 F.3d at 665.  Indeed, the court explained that "the fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare

---

[4]Larimore recites a number of additional acts of the defendants in his response to the motion for summary judgment which were not pled in the First Amended Complaint.  These new allegations were apparently not raised prior to the close of discovery. *See,* Reply brief, p. 8.  These previously unasserted allegations will not be considered herein.

benefits does not automatically render the action subject to ERISA's fiduciary duties." *Sengpiel*, 156 F.3d at 666.

In this case, the acts specified by Larimore relate to company payroll decisions and the establishment of a second benefit plan.

> [C]ourts have typically distinguished between employer actions that constitute "managing" or "administering" a plan and those that are said to constitute merely "business decisions" that have an effect on an ERISA plan; the former are deemed "fiduciary acts" while the latter are not.

*Sengpiel*, 156 F.3d at 665; *see, also, Harpster v. AARQUE Management Corp.*, 2005 WL 1719120 (N.D.Ohio July 22, 2005)("examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan.").

The court has been shown no basis for the contention that payroll decisions such as the establishment of salaries and bonuses, or a decision to provide a second stock plan for the benefit of a key employee unable to participate in the ESOP, have anything to do with the management or administration of the ESOP. These appear to be garden variety corporate decisions. The mere fact that these decisions have an impact on the ESOP is not determinative of the issue under 6th Circuit law.

Larimore goes to some lengths to paint the picture of Grant as engaging in self-serving activities in disregard of his duties to the ESOP. However, the court notes that nowhere does Larimore contend that the payment of salaries and bonuses or the creation of a benefit plan were improper or beyond the powers of Grant, in his capacity as President, or the board of directors to implement.[5] He does not allege that the decisions were corrupt nor taken in bad faith. Rather, Larimore takes issue with what he sees as the ultimate "dollars and cents" impact of paying out more

---

[5]While Larimore takes issue with what he perceives to be procedural irregularities in the composition and functioning of the board of directors, those matters are certainly not the stuff of an ERISA fiduciary duty claim.

in salaries and bonuses than may have been wise in a down year for the corporation.  He takes issue with the stock plan only insofar as it was implemented for Grant himself.  Larimore does not challenge the board's power, but rather with its wisdom in taking such actions.  Larimore urges that a "side agreement" to offer shares of stock outside the ESOP to Grant is impermissible because it may impact the value of the company's shares of stock and thus impacts the ultimate value of the ESOP.  This is the sort of challenge that the "two hat" rule addresses.

The Sixth Circuit has clearly stated that "the fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties." *Sengpiel*, 156 F.3d at 666.  Only when the employer acts in its fiduciary capacity - that is, when it is engaged in managing or administering the plan - are its actions subject to ERISA fiduciary duties.  *Sengpiel*, 156 F.3d at 665; *Grindstaff v. Green*, 133 F3d 416, 423 (6th Cir. 1998).  Decisions regarding compensation for and bonuses paid to employees and officers of a corporation are traditionally decisions made by the corporation through its board of directors and subject to challenge through shareholder derivative suits.  *See generally,* 164 A.L.R. 1125 (1946) (Annotation: *Power of corporation or its officers with respect to payment of bonus or pension to officers or employees); Harpster*, *supra.*; *Neff v. Gas & Electric Shop*, 22 S.W.2d 265 (Ky. 1929)(custom to pay salary plus bonus; not objectionable unless corrupt or so disproportionate to service rendered as to amount to bad faith); *Harpster*, *supra.* (the decision of directors to add selves as beneficiaries of plan did not implicate ERISA fiduciary duties;  merely decision concerning who would receive benefits).

Larimore has cited authority from other jurisdictions in an attempt to encourage the court to limit the application of the "two hat" rule in this instance.  We have been shown no reason to depart from Sixth Circuit authority.  The court finds that under the holding in *Sengpiel, supra.* Counts II and III must be dismissed.

A separate order will be entered this date in accordance with this opinion.